IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHEILA ALLEN, individually and on behalf of all others similarly situated, | Case No. 13-cv-08285 |
| Plaintiff, | Assigned to the Honorable Rebecca R. Pallmeyer |
| v. | Magistrate Judge Schenkier |
| JP MORGAN CHASE BANK, N.A., | |
| Defendant. | |

# OBJECTION

Objector, Candysse S. Carlsen, hereby objects to the Settlement in *Sheila Allen v. JP Morgan Chase Bank, N.A.,* Case No. 13-cv-08285 as follows:

## PRELIMINARY STATEMENT

I, Candysse S. Carlsen, am a class member in *Sheila Allen v. JP Morgan Chase Bank, N.A.,* Case No. 13-cv-08285. My cell phone number is 323-992-5071. I received a post card notice in the mail indicating I was a class member – Claim # JPA-10253597801. Exhibit 1.

## INADEQUATE RELIEF

The relief is inadequate because it neither protects the Class nor the public from Defendant's conduct going forward. What steps will Defendant take to ensure compliance with the TCPA? What expectations should the

1
**OBJECTION TO SHEILA ALLEN v. JP MORGAN CHASE BANK, Case No. 13-cv-08285**

public have regarding Defendant's conduct? This settlement does not provide any injunctive relief that would prohibit Defendant or its agents from engaging in similar wrongful conduct. The Court should order some form of injunctive relief against the Defendant to the benefit of the Class and the public.

The Class cannot determine the reasonableness, adequacy, or fairness of the cash relief because Class Counsel neither indicates the Class size in the notice or in its fee motion. The Class cannot determine settlement fairness without knowing how many people are valid Class Members. Class Counsel estimates that Claimants will receive between $45 to $55. Is that after fees, notice and administrative costs, and incentive awards? Does the range contemplate an equal amount across all Class Members? That would mean that there are between 105,000 and 130,000 class members (if administration costs are $1 million). Does the $45-$55 range take into account the average claims rate for claims-made settlements? If not, claims-made settlements have an average claims rate of about 9% or less. That would mean that around 9,000 Class Members will submit claims. How many claims have been submitted to date? If only 9,000 class members submit claims, Claimants will receive a windfall of more than $600 each. A fair distribution of the settlement benefits would have included automatic distributions to Class Members with valid addresses. That would have ensured payment to class members and would have prevented any claimant from receiving an unfair windfall. It is unfair to the Class that only 1 out of 10 Class Members will receive payment in exchange for a full release of all claims.

The relief also is unfair because it does not adequately compensate Class Members for their waiver of FDCPA claims. FDCPA allegations were never pled in this case and it would be unreasonable and unfair for the Defendant to sweep those claims into the Class Release. There is no indication that Class

**OBJECTION TO SHEILA ALLEN v. JP MORGAN CHASE BANK, Case No. 13-cv-08285**

Counsel adequately investigated FDCPA violations. Further, it would be unfair to include any FDCPA claims in the Class Waiver because the named representative herself does not have any FDCPA claims against Defendant. Unless Defendant increases the total settlement amount, the Court should limit the scope of the release to TCPA claims alone.

## INADEQUATE NOTICE

The Notice and settlement are inadequate because they do not provide for how unclaimed and/or remaining settlement funds will be distributed. The settlement contemplates a cy pres beneficiary and distribution, but a beneficiary is not named, which is unfair to the Class. A specific cy pres recipient should have been identified in the settlement agreement and notice. The Class has the right to know how unclaimed settlement funds will be distributed and ultimately used. The parties should have outlined how the cy pres recipient will utilize any remaining funds to benefit absent Class Members. No stipulation for unclaimed/remaining settlement funds was made here. The Settlement Agreement merely provides that remaining settlement funds "shall be paid as cy pres to a charity mutually agreed upon by the Parties, subject to Court approval." It is inappropriate for the Parties to gloss over the cy pres distribution. Class Members deserve to know who will receive unclaimed funds and how the funds will be used. The absence of such information makes the notice and the settlement inadequate.

## EXCESSIVE INCENTIVE AWARD

The requested incentive award is excessive and unfair to the Class. Incentive awards are appropriate if compensation would be necessary to induce an individual to become a named plaintiff in the suit (see Montgomery v. Aetna Plywood, Inc, 231 F.2d 399, 410 (7th Cir. 2000). Here, an incentive award is

not required because Plaintiff had individual claims in the tens of thousands of dollars. Regardless of whether or not an incentive award would be necessary to induce an individual to become a named plaintiff, a lead plaintiff's participation must still justify the award request (see Cook v. Niedert, 142 D.3d 1004, 1016 (7th Cir. 1998)). What did Plaintiff Allen do to protect the interests of the class? To what degree did the class benefit from those actions? How much time and effort did she expend in pursuing the litigation? Was she deposed? What risks did she face? Class Counsel cites Tuza in support of its incentive award request. Tuza does not stand for the proposition that a Plaintiff should receive an incentive award in proportion (or in relation to) the size of her individual claims. The Tuza case also fails to explain the work plaintiff performed to advance the class' interests, or whether or not the named plaintiff would receive class benefits on top of the incentive award. The purpose of an incentive award is to compensate named plaintiffs for the risks they take and their role as a class fiduciary. Here, a $25,000 incentive award request is excessive, unreasonable, and unfair to the Class without an explanation justifying such a premium. The $25,000 request is at least 450 times greater than the average Claimant will receive, which is patently unfair. Will Plaintiff Allen receive an incentive award on top of her Class benefits? Plaintiff Allen should not be permitted to collect both Class Benefits and an incentive award. Plaintiff Allen should not be permitted to recover class benefits on top of a service award that represents more than a four hundred times the average Class Member payout. Such amounts are unreasonable in comparison to the results achieved for Class Members. If class representatives and their attorneys routinely expect the Court to award thousands of dollars in awards on top of their share of the settlement benefits, class representatives may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to protect.

The Court should not approve this settlement because it unfairly compensates unharmed individuals. Plaintiff Allen has not established standing because she has not demonstrated any injury from Defendant's conduct. Class Counsel agrees that "TCPA damages are purely statutory damages in that Class Members have not suffered any significant out-of-pocket losses or other economic harm" (Fee Motion at 17). The Court should not approve this settlement until the Supreme Court addresses in Spokeo v. Robins whether a plaintiff is required to prove an injury-in-fact in order to establish standing. While some Class Members may have suffered harm from Defendant's conduct, such as Class Members with actual FDCPA claims against Defendant, Plaintiff Allen has not suffered any harm.

Even if an injury-in-fact is not required for standing, the FCC permits first-time calls to reassigned telephone numbers, which includes an undefined portion of the Class. Callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make those calls are permitted to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment (see FCC 15-72). Anyone in the Class Member list with a reassigned number that was called only once should be excluded from the Class. It would be unfair to the Class to compensate individuals that neither suffered economic harm and were called by Defendant only once. Such individuals should not receive compensation. The Court should require the parties to identify such individuals and exclude them from the Class.

## EXCESSIVE FEE AWARD

In light of the above points, Class Counsel's fee request is excessive and unreasonable. The results achieved for the Class do not support a fee award

equal to 1/3 of the settlement. Other class action fee awards and Plaintiff Allen's contingency fee agreement do not sufficiently support Class Counsel's request. If less than 10% of the class submits a valid claim form, the Court should apply a lodestar analysis and award a fee accordingly. The court performed a similar analysis in Americana Art China Company, Inc. v. Foxfire Printing & Packaging, Inc., 743 F.3d 243 (7th Cir. Feb. 18, 2014). In that TCPA settlement there was a claim rate of only 7%. Concerned about an inequitable distribution of attorneys' fees in light of the final payout to class members, the district court applied a lodestar analysis instead of awarding the requested one-third percentage. The Court should perform a similar analysis here, taking into account a reasonable hourly rate and the fact that this is not Class Counsel's first TCPA action and that Class Counsel likely used past research and analysis from prior litigation in this case.

Vullings Law Group, LLC

Dated: September 4, 2015

OBJECTOR

Candysse S. Carlsen

By: /s/ Brent F. Vullings

Brent F. Vullings, Esq.
Vullings Law Group
3953 Ridge Pike
Suite 102
Collegeville, PA 19426
610-489-6060
bvullings@vullingslaw.com

*Attorney for Objector Candysse S. Carlsen*