UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHEILA ALLEN, individually and on behalf of all other similarly situated, | ) ) ) | Case No. 13-cv-08285 |
| | ) | Honorable Rebecca R. Pallmeyer |
| Plaintiff, | ) ) | |
| v. | ) ) | Magistrate Judge Schenkier |
| JP MORGAN CHASE BANK, N.A., | ) ) | |
| Defendant. | ) | |

### CLASS MEMBER ENZO A. SBERNA'S OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT FAIRNESS HEARING

Comes now class member Enzo A. Sberna, by and through counsel, and hereby objects to the proposed class action settlement. Mr. Sberna states that he is a member of the settlement class and received postcard notice which is attached hereto.[1] Mr. Sberna intends on appearing at the Fairness Hearing through counsel. Mr. Sberna objects to the proposed settlement for the following reasons:

### Introduction:

The proposed settlement can best be described as "get it while you can" as the claims period is woefully short. Meanwhile, Class Counsel touts that they are entitled to $3.4 million in attorney's fees from the Defendant for the alleged "benefit" provided to the class, that only contemplates approximately $50 for each class member without regard to the number of calls,

---

[1] Mr. Sberna is a citizen and resident of the State of Ohio. Mr. Sberna does not wish for his address and cellular telephone numbers to be available in a publicly-filed documents. Accordingly, such information has been redacted from the notice attached hereto. The redacted information is available through Mr. Sberna's counsel.

texts or multiple phone numbers.  If money is left over that is not redistributed to class members, it is funneled into an undisclosed *cy pres* recipient.  Meanwhile, everyone releases their claims except the Defendant, who can still collect on the debts it believes are owed by class members, including persons who merely guaranteed a debt, without regard to whether or not they are class members.      A district court may approve a settlement only if it is "fair, reasonable and adequate" *Synfuel Technologies v. Dhl Express (USA)*, 463 F.3d 646, 652 (7th Cir. 2006); Fed R. Civ. P. 23(e)(1)(C); *Williams v. Rohm*, 658 F.3d 629, 634 (7th Cir., 2011).  Although the standard applied by the appellate court is whether the trial court abused its discretion in approving a proposed settlement, "we insist that district courts exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Technologies*, 463 F.3d at 652 citing *Reynolds v. Beneficial Nat'l Bank* 288 F.3d 277, 279 (7th Cir. 2002).  Historically, the court of appeals has "gone so far as to the characterize the [trial] court's role as akin to the high duty of care that the law requires of fiduciaries." *Id* ; *Williams*, 658 F.3d at 634.  A district court "cannot make an informed judgment about the fairness of a proposed class settlement without assessing the likelihood and value to the class of the case's possible outcomes. *Williams*, 658 F.3d at 634, citing *Synfuel Technologies*, 463 F.3d at 653.

The present settlement before this Court lacks the strength to sustain itself under the weight of these requirements, and must be rejected by the Court as described below. The settlement, as proposed by the parties is not fair, reasonable or adequate and must be denied at this time, subject to approval at a later time if Class Counsel and the Defendants adopt the changes proposed as set forth below.

I.      **The proposed settlement should be denied because the class members are not provided with sufficient time to avail themselves of the benefits that the settlement purports to offer.**

The proposed settlement does not provide the class members with sufficient time to file claims for the benefits this settlement purportedly provides. The claim period is only sixty days "following the Notice Deadline" (Stlmt Agrmt, Doc # 55-2, p. 4, par. 2). This does not provide the class members with sufficient time to file a claim, and is calculated and designed to eliminate, or reduce the number of claimants. In contrast, the parties provide that for those class members who receive a check, or payment that the check will be honored for 120 days.

Here, the parties should provide the class members with at least 120 days to file claims, in order to demonstrate to the Court that the class members have been fully appraised of an opportunity to make a claim and receive a benefit. It cannot be disputed that response rates in TCPA class actions are historically low, typically less than 3% of those eligible to make claims. Given the low response rate among class members in TCPA cases Class Counsel should ensure that the class members are given every opportunity to make claims which includes providing a reasonable deadline to make such claims.

Without additional time to file a claim, the vast majority of class members will be unable to avail themselves of the benefits of this settlement. Additional time means the potential for more claims. More claims mean the unlikely occurrence of a *cy pres* beneficiary being nominated.

More claims would assist this Court in evaluating the fee award requested by class counsel, and whether or not it is reasonable. Without additional time for the class members to file a claim, the proposed settlement gives the appearance that the settlement is mainly a vehicle for providing class counsel with attorneys' fees- and not providing benefits to the class.

**II.     The proposed settlement should be denied because the class members are only permitted to make one claim, or recovery for only one call or text, regardless of the number of calls, texts received, or phone numbers contacted by Defendant.**

Class members can only make one (1) claim, "regardless of the number of calls/text messages the Settlement Class Member received, the number of accounts held or obligations owed at any time, or how many cellular telephone numbers Chase called using an automatic dialing system and/or an artificial or prerecorded voice in connection with efforts to contact the Settlement Class Member." (Stlmt Agrmt, Doc # 55-2, p. 12 par. F.1 "Awards to Settlement Class Members").  Thus, in exchange for a chance at maybe $50.00, the class members have lost an opportunity to collect for each and every phone call made by Defendant or text message, on each and every phone line.  The potential for each class member is possibly thousands of dollars under the TCPA.  But here, Class Counsel has promoted this settlement as a "benefit" to the class members when this pay-out structure demonstrates it is only good for the Defendant.

Here, Class Members not only receive pennies for their claims, but are still " . . . fully obligated on any and all such debts" owed to Defendant Chase. (Stlmt Agrmt, Doc # 55-2, p. 13 par. 4):

> 4. Obligations of Settlement Class Members Unaffected By Settlement. The Settlement shall not affect debts owed by Settlement Class Members to Chase. All Settlement Class Members will remain fully obligated on any and all such debts. Any payments issued pursuant to this Settlement will not re-start the statute(s) of limitations applicable to the collection of any debts.

By eviscerating the relief available to the class members ($500 per violation) the class members do not receive the advantage of the calculations of multiple calls on multiple phone lines, and text messages which in many instances would offset any amounts allegedly owed to Defendant Chase by many class members. This would have been a huge benefit to class

members, who instead not only do not receive the full benefit under the statute, but only receive a one-time payment of roughly $50.00.

A better approach is to calculate the violations for each class member, and then attribute a value of $50.00 per violation that is then used as an offset, or credit against what is allegedly owed to the Defendant. This makes the $50.00 claim mean something to the class members who were contacted by Defendant because they owed money. Making the adjustment to each and every class member's account assures that all class members receive the benefit and are not forced to fill out a claim form to receive a payment.

The failure of class counsel to secure a benefit for class members that allows for an offset for class members who are allegedly indebted to the Defendant makes the recovery for the class weak, at best, and does not justify the fee award sought by Class Counsel. If this Court approves the proposed settlement as presented by the parties, it should substantially discount the fee application of the Plaintiffs in light of the paltry recovery offered to the class members.

### III. The Settlement is unfair and unreasonable, in that the parties cannot divert class member recovery to unknown *cy pres* beneficiaries while existing class members receive pennies on the dollar for their claims.

Class Members' recovery is further diluted by the establishment of a *cy pres* beneficiary for remaining funds under certain circumstances:

> 3. Remaining Funds. Money in the Settlement Fund that has not been distributed following the expiration of checks issued pursuant to the Second Distribution as set forth in Section III.G.3 above, including money not distributed because there is not enough money in the Settlement Fund to justify a Second Distribution (the "Remaining Funds"), shall be paid as cy pres to a charity mutually agreed upon by the Parties, subject to Court approval. No money remaining in the Settlement Fund shall revert to or otherwise be paid to Chase.

(Stlmt Agrmt, Doc # 55-2, p. 14 par. G.3).

This Court should not approve such disbursements under any circumstances, as this diversion of class funds is not supported in the 7th Circuit. *Cy pres* recovery "should be reserved for unusual circumstances", and should only be utilized or considered "in which it is difficult or impossible to identify the persons to whom damages should be assigned or distributed." *Mace v. Van Ru Credit Corp., 109 F.3d 338, 345 (C.A.7 (Ill.), 1997). Cy pres* is "a procedural device that distributes money damages either through a market system (e.g., by reducing charges that were previously excessive), or through project funding (the project being designed to benefit the members of the class)." *Mace, 109 F.3d at 345; Simer v. Rios, 661 F.2d 655, 675 (7th Cir. 1981).*

Here, no information is provided to this Court, or anyone objecting to the settlement as to what *cy pres* beneficiary is "designed to benefit the members of the class" , much less what "project" is to be established if the above criteria are met (which is likely, given the historic poor claims rates to TCPA cases).

A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," and must not benefit a group "too remote from the plaintiff class," *Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1308 (9th Cir., 1990).* This analysis should be revisited if this Court permits this settlement to proceed without ordering the identification of the *cy pres* beneficiary, and such is established at a later time. Objector Sberna retains the right to supplement his objection at such time.

In the 7th Circuit, *cy pres* is limited in application, and "is used where the individuals injured are not likely to come forward and prove their claims or cannot be given notice of the case." *Mace, 109 F.3d at 345; Simer v. Rios, 661 F.2d 655, 675 (7th Cir. 1981).* The parties in this case have not made such assertion, and to the contrary, tout that notice was provided to these

class members. After all, the Defendants knew exactly how to reach each and every class member with their collection calls, text messages, and automated calls. The parties are hard pressed to argue that they cannot be given notice of this case, or that they are unlikely to come forward and prove their claims.

Anticipating that class members will not file enough claims to exhaust the meager fund established by the parties, they have agreed that any "residual" funds remaining that are unclaimed by class members-regardless of the reason-will be funneled into yet another *cy pres* recipient, undisclosed at this time.

If, and only if this Court contemplates approving *cy pres* relief in this case, Class Counsel should declare whether or not they have any ties or connections to either charitable organization. Because "when the selection of *cy pres* beneficiaries is not tethered to the nature of the lawsuit and the interests of the silent class members, the selection process may answer to the whims and self-interests of the parties, their counsel or the court." *Nachshin v. AOL, LLC 663 F.3d 1034, 1039 (9th Cir., 2011)* ("Lawyers and judges have grown accustomed to controlling these pots of money, and they enjoy distributing them to favored charities, alma maters and the like.").

Do any of the firms or attorneys before this Court have a relationship with any of the *cy pres* recipients identified by class counsel? Past or current board members? Any such firms or attorneys received any benefit from such cy pres recipients? This Court should inquire of Class Counsel to explain how they came to elect, or nominate such *cy pres* beneficiaries, and to disclose any ties or connections they may have with the *cy pres* beneficiary, once they make such designation.

However, this Court should deny the settlement at this time until the parties have identified a *cy pres* recipient and demonstrated that such beneficiary designation is a better alternative to exhausting all the funds by paying same to the class members.

**IV.    Class Counsels' fee request is unreasonable, in that it appears to have been calculated based upon the administration costs of the settlement including notice and the handling and payment of claims which is not permitted in the 7th Circuit.**

It appears that Class Counsel has improperly calculated their attorneys' fees based upon the administration costs. In their Memorandum supporting their fee application, "Class counsel respectfully move the Court for an award of attorneys' fees and costs not to exceed $3,399,9662, which represents one third of the common fund and also subsumes all litigation costs." (Memo. Support Fees, Doc # 59, p. 8, 1st paragraph).  However, the common fund includes the administrative costs (whatever such amount is when revealed by the parties, as noted in the footnote to the above quote):

>   1.  The Settlement Fund. As full and complete consideration for the Settlement, Chase will pay the total Settlement Fund of $10,200,000 to fully and completely settle all claims of Plaintiff and the Settlement Class Members. The Settlement Fund shall be used to make all payments pursuant to the Settlement including, without limitation, all Settlement Awards to claiming Settlement Class Members and the Settlement Costs. Chase shall deposit money into the Escrow Account as follows: (a) Chase shall advance the amounts necessary to pay for the Notice Program and settlement administration, which advances shall be credited against the Settlement Fund; and (b) Chase shall pay the balance of the Settlement Fund into the Escrow Account within five (5) business days following the Effective Date. Chase shall not, under any circumstances, be obligated to pay any amounts in addition to the Settlement Fund in connection with the Settlement.

(Stlmt Agrmt, Doc # 55-2, p. 10, C. Settlement Consideration).  The 7th Circuit that recently affirmed that attorney's fees are calculated after excluding notice and claims administration costs. *See Redman v. Radioshack Corp., 768 F.3d 622, 630 (7th Cir. 2014);  Pearson v. NBYT,*

*Inc.,* --- F.3d ---, 2014 WL 6466128, at *2 (7th Cir. Nov. 19, 2014).

Any award of attorneys' fees should be calculated after subtracting the administration

costs, as such amounts are not properly included in the common fund for purposes of calculating

attorney's fees. *See* *Redman, supra.*

**V.      The Release is overly broad, and contemplates the release of claims of persons who are not necessarily members of the Settlement Class, and therefore the settlement must be denied.**

Here, the parties have agreed that persons who merely co-signed for a class member or

guaranteed a class member's account are deemed to have released Defendant from their claims

against it as described below:

H. Releases. As of the Effective Date, Plaintiff and the Settlement Class Members
provide the following releases:

> Plaintiff and each and all Settlement Class Members, on
> behalf of themselves and their respective spouses, heirs,
> executors, administrators, representatives, agents, attorneys,
> partners, successors, predecessors-in-interest, assigns, and
> other person claiming through any of them, <u>and, if relevant,
> any co-signer, cobuyer or co-borrower or guarantor of their
> accounts with Chase's auto subline of business, if applicable,
> and any other person claiming through any of them,</u> will be
> deemed to have fully released and forever discharged Chase .
> . .

(Stlmt Agrmt, Doc # 55-2, p. 14-15, par. H).  This sweeping language invalidates the Release,

and unless Class Counsel clarifies its application to only those persons who are class members,

requires this Court to deny the proposed settlement on this basis alone. A release of claims

without consideration results in a settlement that is not fair, reasonable or adequate, and is a

settlement that a trial court cannot approve. *Reynolds v. Beneficial* *Natl. Bank et al, 288 F.3d*

*277, 282-284 (7th Cir, 2002).*

Here, the Release contemplates adding persons into the release language who are not

identified as class members. Without such clarification from the parties as to whether or not "co-signer", "cobuyer" and "co-borrower" are only inclusive for persons who meet the class definition, then this proposed settlement should be rejected by this Court under *Reynolds.*

WHEREFORE, Objector Sberna prays that this Court enter the following in its Judgment:

1) Denying the proposed settlement until the parties provide an extended claims period deadline of at least 120 days, meaning that the claims deadline will run for 120 days instead of the proposed 60;

2) Deny the proposed settlement until the parties permit class members to receive credit against any amounts owed to the Defendant by calculating the number of violations per class member, per phone line at an amount of $50.00 per violation, thereby removing the necessity of extending the claims period, or forcing class members to submit claims;

3) Deny the proposed settlement until such time as the parties identify a cy pres recipient that satisfies the 7th Circuits standard of review as described above, and demonstrates to this Court that payment of remaining funds to class members is impractical (however, if the parties present a settlement as discussed in paragraph (2) above such requirement is unnecessary as no cy pres is contemplated);

4) Deny any proposed fee award to class counsel that involves calculating a percentage of the fund that includes the costs of administering this settlement, including notice and administering the claims process;

5) Calculate any fee award to class counsel based on the benefit that is actually received by the class members, as opposed to the benefit offered and calculate a percentage of

the fund from the claims actually made; and

6)      Deny the proposed settlement until the parties clarify whether or not the Release

language purports to bind persons who are non-class members that qualify as "co-

signers", "coborrowers" or "cobuyers", and

7)      Any other relief necessary to promote the interests of this settlement being deemed

fair and reasonable.

Respectfully submitted,


 /s/ Jonathan E. Fortman_____
JONATHAN E. FORTMAN
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, Missouri  63031
Ph# (314) 522-2312
Fax:  (314) 524-1519
Email:  jef@fortmanlaw.com


STEVE A. MILLER
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

JOHN C. KRESS
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO  63111
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

**CERTIFICATE OF SERVICE**

On this 4th day of September, 2015 this document was served upon all parties via the Court's ECF filing system.

_____/s/ Jonathan E. Fortman_____
Jonathan E. Fortman

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
**PAID**
COMMUNICATION
SERVICES

*Allen v. JPMorgan Chase Bank, N.A.*
Claims Administrator
P.O. Box 30192
College Station, TX 77842-3192

Postal Service: Please do not mark barcode

Claim #: JPA - 1058872980147480



ENZO A SBERNA

BRUNSWICK, OH 44212-6452

NOTICE OF CLASS
ACTION LAWSUIT
AND PROPOSED
SETTLEMENT

THE COURT AUTHORIZED
THIS NOTICE.

THIS IS NOT A SOLICITATION
FROM A LAWYER.

YOU MAY BE ENTITLED TO
RECEIVE MONETARY
COMPENSATION.

JPA-1   44212

Allen v. JPMorgan Chase Bank NA

## Claim Form Receipt

> Thank You. Your claim form has been submitted. Please print this page as your receipt.

Your Claim Number is 10588729801. Please retain this number for your records.

[ **Print** ]

Case Code: **JPA**

Date: **September 3, 2015**

## CLAIMANT INFORMATION

**ENZO A SBERNA**

~~████████████████~~

**BRUNSWICK, OH 44212-6452**

Contact phone number: ~~████████~~

Email Address: **esberna@yahoo.com**

## CLAIM INFORMATION

Cellular Phone Number(s): ~~████████~~
~~████████~~
~~(██) ██-████~~

Certification | **I declare, under penalty of perjury under the laws of the United States, that the information above is true and accurate and that, on or after November 18, 2009 through May 19, 2015, I received one or more nonemergency automated telephone calls from Chase relating to an auto account to the cellular telephone number(s) listed above. This Claim may be researched and verified by Chase and the claims administrator.**

Please print this page and retain it for your records.

For more information about the settlement and the claims filing process, please review the Class Notice.