**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHEILA ALLEN, individually and on behalf of all others similarly situated,** | ) ) | **Case No.   13-cv-08285** |
| | ) | |
| **Plaintiff,** | ) ) | **Assigned to the Honorable Rebecca R. Pallmeyer** |
| | ) | |
| **v.** | ) ) | **Magistrate Judge Sidney I. Schenkier** |
| | ) | |
| **JPMORGAN CHASE BANK, N.A.,** | ) ) | |
| | ) | |
| **Defendant.** | ) ) ) ) | |

**RESPONSE OF DEFENDANT JPMORGAN CHASE BANK, N.A.**
**TO OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT AGREEMENT**

1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................1

II.    BACKGROUND ...........................................................................................4

    A.    The Settlement Class Overwhelmingly Supports The Settlement............................4

    B.    The Class Data. ..............................................................5

    C.    The Claim Value Is Substantial. ........................................................5

    D.    The Claims Process...........................................................5

    E.    The Cy Pres Distribution ......................................................6

    F.    The Class Notice ............................................................6

III.    ARGUMENT .................................................................................7

    A.    The Settlement Is Fair, Adequate And Reasonable. ............................................8

        1.    The Claim Value Compares Favorably To The Statutory Damages Available In A Litigated Case.............................................8

        2.    A Per-Call Or Consent-Based Settlement Structure Is Impossible............14

    B.    The Release Is Proper And Not Overbroad. ...............................................16

    C.    The Notice Program Was Excellent And Fully Compliant. ..................................18

    D.    A Cy Pres Distribution Will Only Be Made If Two Attempts To Distribute The Money To Settlement Class Members Fails. .......................................19

    E.    Final Approval Need Not Be Delayed Pending The Supreme Court's Decision In Spokeo..................................................................21

        1.    Each Of The "Stay Factors" Favors Denial Of A Request To Stay...........21

        2.    Chase Would Be Prejudiced By A Stay....................................22

        3.    A Stay Will Prejudice The Settlement Class By Exposing It To The Risk Of No Recovery Whatsoever. .................................................23

        4.    A Stay Will Neither Simplify The Issues In Question Or Streamline The Trial, Nor Reduce The Burden On The Parties Or The Court. .................24

IV.    CONCLUSION................................................................................24

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

ACA Int'l v. FCC,
    No. 15-1211 (D.C. Cir. filed Sept. 21, 2015)...........................................................10

Adams v. AllianceOne Receivables Management, Inc.,
    No. 08-cv-0248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) .................................12

Aljabri v. Holder,
    745 F.3d 816 (7th Cir. 2014) .....................................................................................8

Already, LLC v. Nike, Inc.,
    ___ U.S. ___, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)...........................................8

In re Am. Int'l Grp., Inc. Sec. Litig.,
    293 F.R.D. 459 (S.D.N.Y. 2013) ..............................................................................20

In re AT & T Mobility Wireless Data Servs. Sales Litig.,
    270 F.R.D. 330 (N.D. Ill. 2010)..................................................................................9

In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) .........................................................................17

In re Brand Name Prescription Drugs Antitrust Litig.,
    No. 94 C 897, 1996 WL 167347 (N.D. Ill. April 4, 1996) ....................................................18

In re Capital One Tel. Consumer Prot. Act Litig.,
    80 F. Supp. 3d 781 (N.D. Ill. 2015), appeals dismissed (2015)............................11, 12, 15, 16

Centerline Equip. Corp. v. Banner Pers. Serv., Inc.,
    545 F. Supp. 2d 768 (N.D. Ill. 2008) .......................................................................11

City P'ship Co. v. Atl. Acquisition Ltd. P'ship,
    100 F.3d 1041 (1st Cir. 1996) .................................................................................17

Clinton v. Jones,
    520 U.S. 681 (1997)..............................................................................................21

Connor v. JPMorgan Chase Bank, N.A.,
    No. 3:10-cv-01284-GPC-BGS, Dkt. No. 160 (S.D. Cal. Feb. 5 2015)...................................13

In re Corrugated Container Antitrust Litig.,
    643 F.2d 195 (5th Cir. 1981) ..................................................................................17

LA 51907936

Desai, et al. v. ADT Security Servs., Inc.,
    No. 1:11-cv-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013).....................................13

E.E.O.C. v. Hiram Walker & Sons, Inc.,
    768 F.2d 884 (7th Cir. 1985) .............................................................................9

Fair v. Int'l Flavors & Fragrances, Inc.,
    905 F.2d 1114 (7th Cir. 1990) ..........................................................................17

Fields v. Mobile Messengers Am., Inc.,
    No. C 12-05160 WHA, 2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) .................10

Forman v. Data Transfer, Inc.,
    164 F.R.D. 400 (E.D. Pa. 1995).........................................................................11

Gautreaux v. Pierce,
    690 F.2d 616 (7th Cir. 1982) ..............................................................................8

In re Gen. Am. Life Ins. Co. Sales Practices Litig.,
    357 F.3d 800 (8th Cir. 2004) ............................................................................17

Glen Ellyn Pharmacy, Inc. v. La Roche–Posay, LLC,
    No. 11 C 968, 2012 WL 619595 (N.D. Ill. Feb. 23, 2012).....................................20

In re Groupon Derivative Litig.,
    882 F. Supp. 2d 1043 (N.D. Ill. 2012) ................................................................22

Isby v. Bayh,
    75 F.3d 1191 (7th Cir. 1996) ............................................................................7, 8

Jamison v. First Credit Servs., Inc.,
    290 F.R.D. 92 (N.D. Ill. 2013)........................................................................2, 10

Kevin Lemiuex v. Global Credit & Collection Corp.,
    No. 3:08-cv-01012-IEG-POR, Dkt. No. 46 (S.D. Cal. Sept. 20, 2011)..................13

Landis v. N. Am. Co.,
    299 U.S. 248 (1936)...........................................................................................21

Maria Agne, et al. v. Papa John's Int'l, Inc., et al.,
    No. 2:10-cv-01139, Dkt. No. 389 (W.D. Wash. Oct. 22, 2013) ..........................12

Markel Am. Ins. Co. v. Dolan,
    787 F. Supp. 2d 776 (N.D. Ill. 2011) .................................................................21

McKinnie v. JP Morgan Chase Bank, N.A.,
    678 F. Supp. 2d 806 (E.D. Wis. 2009)...........................................................8, 20

In re Mex. Transfer Litig.,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...............................................................8, 20

Mullane v. Cent. Hanover Bank & Trust Co.,
    339 U.S. 306 (1950) ...............................................................................................18

Murray v. GMAC Mortg. Corp.,
    434 F.3d 948 (7th Cir. 2006) ...........................................................................11, 18

Nielson v. The Sports Auth.,
    No. C 11-4724 .........................................................................................................19

Officers for Justice v. Civil Serv. Comm'n,
    688 F.2d 615 (9th Cir. 1982) ...................................................................................9

Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.,
    No. 2:13-CV-00672-KJM-KJN, 2015 WL 3622999 (E.D. Cal. June 9, 2015) .......19

Oswald v. McGarr,
    620 F.2d 1190 (7th Cir. 1980) ................................................................................17

Robins v. Spokeo, Inc.,
    742 F.3d 409 (9th Cir. 2014), cert. granted, 135 S. Ct. 1892 (U.S. Apr. 27,
    2015) ................................................................................................................ passim

Rose v. Bank of Am. Corp.,
    No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .............12

Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.,
    No. 3:10-cv-01777-AJB-NLS, Dkt. No. 42 (S.D. Cal. Feb. 15, 2013).....................12

Schulte v. Fifth Third Bank,
    805 F.Supp.2d 560 (N.D. Ill. 2011) ...............................................................3, 8, 14

Schulte v. Fifth Third Bank,
    No. 09 C 6655, 2012 WL 2254197 (N.D. Ill. June 15, 2012) .................................16

Spokeo v. Thomas Robbins,
    11-56843 (9th Cir. 2014) (cert. granted April 27, 2015) ........................................22

St. Louis, Iron Mt. & S. Ry. Co. v. Williams,
    251 U.S. 63 (1919) ..................................................................................................11

Steinfeld, et al. v. Discover Financial Servs.,
    No. 3:12-cv-1118, Dkt. No. 97 (N.D. Cal. March 31, 2013)...................................12

iv

In re Sw. Airlines Voucher Litig.,
    No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013), appeal dismissed
    (Jan. 3, 2014), aff'd as modified, No. 13-3264, 2015 WL 4939676 (7th Cir.
    Aug. 20, 2015) ................................................................................................24

Synfuel Techs., Inc. v. DHL Express (USA), Inc.,
    463 F.3d 646 (7th Cir. 2006) ...........................................................................9

Texas v. Am. Blast fax, Inc.
    464 F. Supp. 2d 892 (W.D. Tex. 2011)...........................................................11

Trippe Mfg. Co. v. Am. Power Conversion Corp.,
    46 F.3d 624 (7th Cir. 1995) .............................................................................22

U. S. v. Citrin,
    972 F.2d 1044 (9th Cir. 1992) ........................................................................11

Wilkins v. HSBC Bank Nevada, N.A. and HSBC Card Services, Inc.,
    No. 1:14-cv-00190, Dkt. No. 117 (N.D. Ill. Feb. 27, 2015) ...................9, 13, 15, 16

Williams v. Gen. Elec. Capital Auto Lease, Inc.,
    159 F.3d 266 (7th Cir. 1998) .....................................................................16, 17

Young v. City of Chicago,
    No. 10 C 989, 2013 WL 9947387 (N.D. Ill. Dec. 16, 2013) ...........................19

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.  ....................................16

Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.............................................. *passim*

**Rules and Other Authorities**

Federal Rule of Civil Procedure 23 ......................................................................6, 7, 14, 16, 18

In Re Rules & Regulations Implementing the TCPA of 1991,
    23 F.C.C.R. 559 (Jan. 4, 2008) ......................................................................15

In re Rules & Regulations Implementing the TCPA of 1991,
    7 F.C.C.R. 8752 (Oct. 16, 1992)....................................................................15

Manual for Compl. Litig. (2010) at § 21.312 ...........................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant JPMorgan Chase Bank, N.A. ("Chase") respectfully submits this response to the Objections of Robert Burack, Candysse Carlsen,[1] Larry Crawford, Patricia Huff, Mark Rhoades and Enzo Sberna (collectively, the "Objectors" or the "Objections").[2]  Each of the Objections fails to present any compelling reason why this proposed Settlement should not be finally approved.  Accordingly, Chase urges this Court to overrule the Objections.

Tellingly, the low number of requests for exclusion from the Settlement and Objections speaks volumes—of the estimated over two million members of the Settlement Class, only forty-three individuals, or 0.002%, submitted a request for exclusion, and just six individuals, or 0.0004%, presented Objections (some of which have since been withdrawn).  Of the members of the Settlement Class who expressed their opinion of the Settlement by either claiming, objecting, or submitting an exclusion request, more than 99.94% approve of the Settlement.  This alone indicates that the Settlement is fair, reasonable, and adequate.

Objectors challenge the Settlement notwithstanding the fact that, if the Settlement is rejected, over 82,000 Settlement Class Members who submitted claim forms are unlikely to receive relief of any kind.  These individuals object to the Settlement Agreement, and would deny recovery to the over 82,000 claiming Settlement Class Members, on five basic grounds: (1) the amount of compensation to Settlement Class Members; (2) the scope of the release;

---

[1]   Ms. Carlsen has requested to withdraw her objection (Dkt. No. 80) but as of the date of this filing, the Court has not ruled on that request.  As a result, Chase addresses her objections herein.

[2]   Thomas J. Gardner also mailed a purported objection to the parties but Chase does not believe it was filed with the Court.  Gardner also submitted a request to be excluded and thus has been excluded from this Settlement.  (See Preliminary Approval Order (Dkt. No. 58), ¶ 14 ("If a person both requests to opt-out and objects, the request to opt-out will control.")).  Accordingly, he is no longer a class member and therefore lacks standing to object to this Settlement.  His objection should be disregarded entirely.

1

(3) the class notice process; (4) the Settlement Agreement's provision for a *cy pres* payment of residual monies; and (5) the grant of certiorari in <u>Robins v. Spokeo, Inc.</u>, 742 F.3d 409 (9th Cir. 2014), <u>cert. granted</u>, 135 S. Ct. 1892 (U.S. Apr. 27, 2015) (No. 13-1339).[3] For the reasons set forth below, each of these arguments lacks merit.[4]

    <u>First</u>, the Settlement is fair, adequate and reasonable. This Settlement provides more than $10,000,000 for the benefit of Settlement Class Members. As a result, the Settlement compares favorably to nearly every other similar settlement that has been finally approved by this Court and others across the country. The Objectors also argue that Settlement Class Members should have been compensated on a per call basis, rather than receive a pro rata share of the Fund based on claims submission. There is nothing to suggest, however, that Settlement Class Members should be treated differently from one another; and the claims process here was straightforward and no different from others routinely approved in these kinds of settlements. Moreover, the need for inquiry into each of the two million Settlement Class Members' individual facts in order to provide individualized compensation is precisely the type of analysis that would preclude class treatment if this case were litigated. Further, injunctive relief is unnecessary where monetary relief is provided.

    <u>Second</u>, the release language is appropriate and provides no grounds for disapproval. Similar language in other settlements is routinely approved. Settlement Class Members are releasing only those claims that arise out of calls to a cell phone made through the use of an

---

[3]     This argument, that the grant of certiorari in <u>Spokeo</u> should impact this settlement, is asserted only by Objector Carlsen, who has requested to withdraw her objection.

[4]     Certain Objectors also challenge Class Counsel's request for attorneys' fees and Plaintiff's requested incentive award. Chase does not address these matters here because they will be addressed in Plaintiff's papers. Because the Settlement Agreement provides that "Court approval of attorneys' fees and costs, or their amount, are not a condition of the Settlement" (<u>see</u> Settlement Agreement, ¶ III.I), they present no obstacle to approval of the overall fairness of the Settlement.

2

automatic telephone dialing system.  The release is tied appropriately to the allegations in the litigation and is supported by valid consideration.  Chase is entitled to peace and is paying dearly for it.  Thus, the release negotiated at arm's-length is fair and appropriate.

Third, the notice program was proper and reached 97.8% of the Settlement Class,[5] exceeding the range described in the Federal Judicial Center guidelines for class settlements. See JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, FEDERAL JUDICIAL CENTER (2010) (describing 70-95% reach as "high percentage").  The Settlement Class received direct notice via mail or email, and additional notice was provided via a dedicated settlement website.  Each of these forms of notice provided Settlement Class Members with the information required by the Federal Rules of Civil Procedure as well as Due Process requirements.

Fourth, the possibility of distributing residual money in the Settlement Fund to a *cy pres* recipient, but only after an attempt first to distribute the residual money to Settlement Class Members, does not provide a valid basis for objection.  The possibility of *cy pres* was properly disclosed in the class notices and complies with Seventh Circuit authority.

Fifth, the Settlement appropriately compensates the Settlement Class Members, and final approval need not be delayed pending the Supreme Court's decision in Spokeo.  The Settlement was preliminarily approved and the Settlement Class conditionally certified by this Court after the Supreme Court had granted certiorari in Spokeo.  Entering a stay at this stage would greatly prejudice Chase in light of the significant expense already undertaken in connection with the Settlement notice and administration costs.  Moreover, a delay for decision in Spokeo potentially

---

[5]   This percentage is calculated as follows:  2,078,599 unique records (see Dkt. No. 81 at ¶ 6), minus 444 records with no mailing or email address (id.), minus 45,529 records where mail and email was unsuccessful (id. at ¶ 15) which yields 2,032,626 records.  2,078,599 divided by 2,032,626  equals .9778827, or 97.8%.

3

could harm the Settlement Class because an adverse decision could establish that Settlement

Class Members are not entitled to any recovery at all.

Therefore, the Objections should be overruled and final approval of the Settlement

granted.

## II.  BACKGROUND

### A.  The Settlement Class Overwhelmingly Supports The Settlement.

This Settlement is a culmination of extensive adversarial, arm's-length negotiations

between Plaintiff and Chase, including a formal mediation session before the Honorable Wayne

R. Andersen (Ret.) of JAMS on January 21, 2015 and subsequent settlement discussions.[6]  The

Settlement Class is defined as:

> [A]ll persons within the United States who received a
> nonemergency telephone call from Chase's auto subline of
> business to the called party's cellular telephone, made through the
> use of any automatic telephone dialing system or an artificial or
> prerecorded voice, on or after November 18, 2009 through and
> including the date of entry of the Preliminary Approval Order.

(Dkt. No. 55-2 ¶ II.A.26.)  The Settlement Agreement requires Chase to pay $10,200,000

into a non-reversionary Fund that will be used to furnish all payments, including Settlement

Awards and Settlement Costs (which include the administration of the Settlement), as well as

Plaintiff's service award and Class Counsel's fees and costs, in the amount ordered by this Court.

(Id. ¶ II.A.26; III.G.3.)  The Settlement Agreement provided the Settlement Class, following

class notice, with sixty (60) days to submit a claim, request exclusion from or object to the

Settlement.  (Id. ¶ III.B.1.)  A dedicated settlement website was established to provide

information pertaining to the Settlement, permitted Settlement Class Members to submit claims

---

[6]  For a more detailed history of this Action and the Parties' negotiations, see Plaintiff's Memorandum In
Support Of Unopposed Motion For Preliminary Approval Of Class Action Settlement ("Motion for
Preliminary Approval") (Dkt. No. 55).

4

online, and contained important documents relating to the Settlement, including the Settlement Agreement itself.  (Id. ¶ III.E.2.)  Finally, and in exchange for the consideration described above, the Settlement Agreement required Settlement Class Members to release all claims that arose from autodialed calls, or calls placed using an artificial or rerecorded voice, to Settlement Class Members on their cell phones.  (Id. ¶ III.H.)

**B.      The Class Data.**

The Settlement Class consists of 2,078,559 persons.  (See Dkt. No. 81, ¶ 6.)  Forty-three (43) members of the Settlement Class submitted timely requests for exclusion from the Settlement (see id., ¶ 20) and only six (6) objected (of these, only three (3) were timely filed in compliance with the Preliminary Approval Order).  As of October 7, 2015, a total of 84,727 claims had been submitted.  (See id., ¶ 22.)  Chase has agreed that untimely claims received by the date of Final Approval, i.e., up to 48 days late, may still be honored, subject to Court approval.

**C.      The Claim Value Is Substantial.**

Assuming this Court approves the amount of attorneys' fees and costs, class representative award and settlement administration costs sought by Plaintiff, each claiming Settlement Class Member will receive approximately $70.25 in a settlement award (and perhaps more after duplicate and invalid claims are considered).[7]  Class Notice contained an estimate that claims could be in the range of $45-$55.

**D.      The Claims Process**

The claims process was simple, as Settlement Class Members were asked only to confirm that they received an autodialed call to their cell phone and to identify the cell phone number

---

[7] The claims validation and deduplication process is still underway.

5

called. Settlement Class Members were permitted to submit claims through the Settlement Website as well as through the mail.

### E. The *Cy Pres* Distribution

If checks sent to Settlement Class Members are not cashed, leaving a residual in the Settlement Fund, a second attempt will be made to redistribute money to Settlement Class Members. (<u>See</u> Settlement Agreement, ¶ III.G.) If these attempts fail and money still remains in the Fund, the residual money will be donated as *cy pres* to a charity mutually agreed upon by the Parties, subject to Court approval. (<u>See</u> Settlement Agreement, ¶ III.G.3.)

### F. The Class Notice

The Class Notice preliminarily approved by this Court and disseminated by the settlement administrator satisfied all Due Process and Rule 23(c)(2)(B) standards because it effectively reached the Settlement Class and effectively communicated the Settlement Class Members' rights to them. Class Notice reached nearly 98% of the Settlement Class. (<u>See</u> Dkt. No. 81.) Each of the class notices (i.e., the postcard notice, the email notice, and the website notice) stated that the value of each claim might be approximately $45-$55 and identified in bold letters the deadlines for Settlement Class Members to submit a claim, opt out, or object to the Settlement. Each of these notices listed the settlement website address, where Settlement Class Members could find additional information regarding the Settlement.

Additionally, the class notice explained what claims the Settlement would release. The website notice states:

> Unless you exclude yourself from the settlement, you will be part of the Settlement Class and will be bound by the release of claims in the settlement. This means that if the settlement is approved, you cannot rely on any Released Claim to sue or continue to sue, on your own or as part of any other lawsuit, Chase and/or any other Released Parties, as explained in the settlement agreement. It also means that all of the Court's orders will apply to you and

6

legally bind you. Unless you exclude yourself from the settlement, you will agree to release Chase and any other Released Parties, as defined in the settlement agreement, from any and all claims that arise from the automated calls to your cellular telephone at issue in this action.

## III. ARGUMENT

The Settlement is fair, adequate, and reasonable, and the class notices properly informed Settlement Class Members of the material terms of the Settlement and their rights to claim, opt out and object. Accordingly, all of the Objections should be overruled.

The substantive Objections challenge five components of the Settlement: (1) the amount of compensation to Settlement Class Members; (2) the scope of the release; (3) the class notice process; (4) the Settlement Agreement's provision for a *cy pres* payment of residual monies; and (5) the grant of certiorari in Spokeo. Each of these Objections lacks merit and should be overruled.[8]

A proposed class action settlement should be approved if a court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a settlement is ultimately fair, adequate, and reasonable at the final approval stage, courts in this circuit consider the following factors: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. Isby v. Bayh, 75 F.3d 1191, 1199 (7th

---

[8] Certain objections (Crawford, Huff and Rhoades) also should be overruled because they were not timely filed with this Court in compliance with Paragraph 14 of the Preliminary Approval Order. (Dkt. No. 58.) Chase's addressing the merits of these objections is not a waiver of its position that they should be overruled summarily for their non-compliance. As stated earlier, Chase does not respond to the Objections as to the amount of Plaintiff's service award and Class Counsel's fee award, but these Objections provide no basis for this Court to withhold approval of the overall fairness of the Settlement.

Cir. 1996). Courts view the facts related to these factors "in the light most favorable to the

settlement." Id. In addition, "[j]udges should not substitute their own judgments as to optimal

settlement terms for the judgment of the litigants and their counsel." Gautreaux v. Pierce, 690

F.2d 616, 638 (7th Cir. 1982).[9] None of the Objections overcomes the strong presumption of

fairness or otherwise justifies disapproval.

**A. The Settlement Is Fair, Adequate And Reasonable.**

1. <u>The Claim Value Compares Favorably To The Statutory Damages Available In A Litigated Case.</u>

Objectors Burack and Sberna argue – without the benefit of any supporting case law –

that the Settlement is not fair because it does not compensate Settlement Class Members for each

alleged telephone call (Burack Objection (Dkt. No. 63), at pp. 3-4; Sberna Objection (Dkt. No.

68), at pp. 4-5)[10]; (2) it includes persons with reassigned telephone numbers who received only

---

[9]   See also McKinnie v. JP Morgan Chase Bank, N.A., 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (valuing factor that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator. . . suggest that the settlement is fair and merits final approval"); In re Mex. Transfer Litig., 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").

[10]  Objector Carlsen, before she withdrew her objection, argued that the Settlement improperly includes persons with reassigned telephone numbers who received only one call from Chase (Carlsen Objection (Dkt. No. 66), at p. 5); and does not include any injunctive relief. (Id., at p. 2.) To the extent the Court considers the later argument, importantly, injunctive relief is not required for class relief to be appropriate. That the Settlement could have provided additional consideration (every settlement could, just as it also could provide less consideration) is not a valid objection. Schulte, 805 F. Supp. 2d at 591 & 595. Moreover, no consideration is provided "to the public" in a class action settlement; the "public" does not give a release in exchange for the settlement consideration, rather the class members as defined in the Settlement Agreement and this Court's ultimate judgment release their claims. Tellingly, there is nothing to enjoin because neither the Carlsen nor plaintiff Sheila Allen assert that they continue to receive allegedly improper telephone calls from Chase. Nor is there any evidence of ongoing TCPA violations committed against the Settlement Class. Indeed, a litigated claim for injunctive relief would be subject to dismissal as moot. See Already, LLC v. Nike, Inc., ___ U.S. ___, 133 S. Ct. 721, 730-32, 184 L. Ed. 2d 553 (2013) (cessation of challenged practice required dismissal of claim for injunctive relief); Aljabri v. Holder, 745 F.3d 816, 820 (7th Cir. 2014) ("A case is moot, and thus falls outside of the judicial power conferred in Article III, if the outcome will no longer settle an active dispute about the parties' legal rights."). Since no injunction could be imposed

8

one call from Chase (Carlsen Objection (Dkt. No. 66), at p. 5); and (3) it does not include any injunctive relief. (Id., at p. 2.)

These objections are misplaced because any settlement will discount the hypothetical recovery based on litigation risk; this is true for any settlement, whether class or individual. The amounts to be paid under this Settlement represent a fair assessment of the Settlement Class Members' significant risk of receiving nothing at all in a litigated case and the amount of time they would have to wait to be compensated, assuming they prevailed.

The most important factor in evaluating the sufficiency of the settlement consideration is the strength of the plaintiff's case. Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653 (7th Cir. 2006); Wilkins v. HSBC Bank Nevada, N.A. and HSBC Card Services, Inc., No. 1:14-cv-00190, Dkt. No. 117 (N.D. Ill. Feb. 27, 2015). When making its determination, the "district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." E.E.O.C. v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985). Because a settlement is a compromise, it will not be rejected solely because it does not provide a complete victory to the plaintiffs. Id.; see also In re AT & T Mobility Wireless Data Servs. Sales Litig., 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." (internal citations omitted)); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Here, Plaintiff and the Settlement Class Members face genuine litigation risk:

---

on Chase involuntarily, the Settlement Agreement's lack of an injunctive relief provision does not make the Settlement unfair, unreasonable or inadequate.

9

- The Supreme Court may hold that no-injury statutory damage class actions violate Article III standing requirements. See Spokeo.

- The FCC's recent Declaratory Ruling and Order may be set aside by the D.C. Circuit Court on the consolidated appeal of the Order by several industry groups, further limiting recovery under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). See ACA Int'l v. FCC, No. 15-1211 (D.C. Cir. filed Sept. 21, 2015).

- Valid and enforceable agreements between JPMorgan Chase Bank, N.A. and a large portion of its customers to arbitrate disputes on an individual basis would preclude class certification.

- The issue of individualized consent would preclude certification on a motion for class certification because:

  - A large portion of any purported class had, in fact, provided consent to the calls. Identification of the small population of those calls for which defendants cannot produce evidence of consent would involve a highly individualized inquiry that would preclude class certification. See, e.g., Jamison v. First Credit Servs., Inc., 290 F.R.D. 92, 102-09 (N.D. Ill. 2013) (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); Fields v. Mobile Messengers Am., Inc., No. C 12-05160 WHA, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013) (denying certification because plaintiff could not establish that consent issue was appropriate for class treatment);

10

- o The inclusion of lack of consent as part of the definition would create an improper fail-safe class, in that class membership is defined by reference to a legal determination. See, e.g., Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995) (declining to certify TCPA class where the class definition included the issue of consent because such a definition "flies directly in the face of a basic tenet of class certification: a court may not inquire into the merits of the case at the class certification stage"); and

- o The definitions of prior express consent and revocation of consent are disputed, and determining whether particular communications provided consent, and constituted revocation, requires highly individualized analysis, also precluding class certification.

- The Due Process Clause and the Eighth Amendment's Excessive Fines Clause will limit the value of any class judgment because "the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." U. S. v. Citrin, 972 F.2d 1044, 1051 (9th Cir. 1992) (quoting St. Louis, Iron Mt. & S. Ry. Co. v. Williams, 251 U.S. 63, 66-67 (1919)).[11]

As other courts already recognized in approving other settlements, if even one of these risks comes to pass, the proposed class could recover nothing after traveling a very long litigation road.

---

[11] See also Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir. 2006) (holding that "[a]n award that would be unconstitutionally excessive may be reduced" even if a class is certified); Centerline Equip. Corp. v. Banner Pers. Serv., Inc., 545 F. Supp. 2d 768, 778 (N.D. Ill. 2008) (stating that, if defendant on a TCPA claim is "able to show that the statutory damages are in fact so excessive as to be improper, the appropriate remedy would be a reduction of the aggregate damage award. . . .") (citing Texas v. Am. Blast fax, Inc., 164 F. Supp. 2d 892, 900-01 (W.D. Tex. 2011)).

11

Judge Holderman addressed identical issues in granting final approval of a similar TCPA settlement in this District earlier this year. He explained that "[i]n light of Capital One's potentially meritorious defenses and the legal uncertainty concerning the application of the TCPA, the court concludes that Plaintiffs would probably face an uphill battle to trial and, once there, obtaining relief. The settlement provides value that is fair considering the very real possibility that Plaintiffs may recover nothing if they were to proceed further with the litigation." In re Capital One Tel. Consumer Prot. Act Litig., 80 F. Supp. 3d 781, 791-92 (N.D. Ill. 2015), appeals dismissed (2015). In addition, the reality of lengthy, contested litigation as well as the substantial possibility that any award in favor of the Settlement Class would be subject to appellate review given the statutory damages involved fully justifies the Settlement. See Rose v. Bank of Am. Corp., No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014) (approving similarly structured TCPA class action settlement). Any litigated result favorable to the proposed class would be appealed, potentially reversed, and litigation would not be resolved for an extended period of time.

Assuming late claims are permitted, and depending on this Court's ruling on Plaintiff's request for a service award as well as Class Counsel's fee request, it is likely that each claiming class member will receive approximately $70.25, if not more. This claim value compares favorably with many other TCPA settlements.[12]

---

[12] See Rose v. Bank of Am. Corp., No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014) (collecting cases and finally approving a TCPA class action settlement where class members were estimated to receive in the range of $20-$40); Adams v. AllianceOne Receivables Management, Inc., No. 08-cv-0248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (granting final approval of TCPA settlement with a maximum recovery amount of $40 per person); Steinfeld, et al. v. Discover Financial Servs., No. 3:12-cv-1118, Dkt. No. 97 (N.D. Cal. March 31, 2013) (same); Maria Agne, et al. v. Papa John's Int'l, Inc., et al., No. 2:10-cv-01139, Dkt. No. 389 (W.D. Wash. Oct. 22, 2013) (granting final approval of TCPA settlement where each class member would automatically receive a merchandise certificate enabling him/her to order a free Papa John's pizza and each claimant would receive a $50 payment); Sarabi v. Weltman, Weinberg & Reis Co., L.P.A., No. 3:10-cv-01777-AJB-

12

One Settlement Class Member, Sberna, objected to use of a claims process at all and also objected that the Settlement did not provide for application of credits to outstanding loans. (Sberna Objection (Dkt. No. 68), at pp. 4-5.) But TCPA settlements routinely require class members to submit claims to indicate their belief that they did not consent to receive auto-dialed or pre-recorded calls. This is particularly appropriate where, as here, the definition of the Settlement Class is broad to avoid the individualized issues discussed below. And Sberna does not identify any problems with how the claims process functioned, as over 84,000 class members navigated it without incident. A claims process also reduces the likelihood of multiple redistributions (and the associated expense of any redistributions that may be necessary) because claiming Settlement Class Members confirm their address and thus are more likely to receive and cash their settlement checks. Finally, many Settlement Class Members are not Chase customers at all (like Plaintiff Allen) or have repaid their loans, so there is no account to credit. Even assuming a Settlement Class Member had an open loan, sending him or her a check gives him or her the choice whether to apply the extra money to his or her outstanding balance or use the money for a different purpose. Sending checks to Settlement Class Members who submit claims is an appropriate and efficient way to provide consideration to Settlement Class Members who submitted claims, and does not render the Settlement unfair; this method is followed routinely in many, and perhaps most, class action settlements.

Most significantly, Settlement Class Members could have opted out of the Settlement and individually pursued their claims against Chase if they believed that their claims would be worth more in litigation or if they disagreed with the Settlement's pro rata structure or use of a claims

---

NLS, Dkt. No. 42 (S.D. Cal. Feb. 15, 2013) (granting final approval of TCPA settlement where each class member would receive $70 or pro rata share of amount remaining in the settlement fund); Kevin Lemiuex v. Global Credit & Collection Corp., No. 3:08-cv-01012-IEG-POR, Dkt. No. 46 (S.D. Cal. Sept. 20, 2011) (same); Desai, et al. v. ADT Security Servs., Inc., No. 1:11-cv-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) (granting final approval of TCPA settlement where each claimant was expected to recover between $50 and $100); Connor v. JPMorgan Chase Bank, N.A., No. 3:10-cv-01284-GPC-BGS, Dkt. No. 160 (S.D. Cal. Feb. 5 2015) (finally approving TCPA settlement providing for $69.97 recovery to each claimant); In re Capital One Tel. Consumer Prot. Act Litig., 80 F. Supp. 3d at 789-90 (finally approving a recovery of approximately $34.60 per claim); Wilkins, No. 1:14-cv-00190, Dkt. No. 117 (N.D. Ill. Feb. 27, 2015) (finally approving TCPA settlement providing for $111 recovery to each claimant).

13

process. As a group, they did not. Their collective decision to claim demonstrates their belief that the Settlement is in fact fair and better than the alternative of continued litigation. As a result, the Settlement as a whole, in light of the obstacles faced by Plaintiff and the Settlement Class, is fair, reasonable and adequate.

2.    <u>A Per-Call Or Consent-Based Settlement Structure Is Impossible.</u>

It was not unfair to structure the Settlement have claimants share in the Settlement Fund <u>pro rata</u>. Rule 23 does not require claims to be weighted differently based on relative call volume, and Objectors Burack and Sberna's arguments to the contrary should be rejected. The Objectors show no "real and cognizable difference" among Settlement Class Members' injuries to justify departure from a <u>pro rata</u> plan of distribution, without causing the settlement structure to completely fall apart, as an administrative matter, due to the need to resolve multiple individualized issues. <u>See</u> <u>Schulte v. Fifth Third Bank</u>, 805 F.Supp.2d 560, 589 (N.D. Ill. 2011).

To conduct an individualized inquiry into how many calls each Settlement Class Member received would be administratively unmanageable and would require individualized inquiry into each Settlement Class Member's account, depleting the Settlement Fund through unnecessary administrative expense, delaying payment of claims, defeating the very purpose of this Settlement — to compensate Settlement Class Members fairly and promptly — and indeed threatening the viability of settlement on a class wide basis. <u>See</u> Fed. R. Civ. P.23 (b)(3)(D) (class certification should be denied if case is administratively unmanageable).

Further, although Objector Sberna's alleges in his Objection that the "structure" is "only good for [Chase]" and that Settlement Class Members are forgoing "possibly thousands of dollars[,]" he conceded during his deposition that his own personal claim lacks any value whatsoever. During his deposition, Sberna stated that he provided his telephone number to

14

Chase on multiple occasions. (See Dkt. No. 82-2 at p. 78:17-21; see also Declaration of Ralph M. Konrath ("Konrath Decl."), Ex. B.). As a result, he provided his consent under the TCPA to receive calls from Chase and is entitled to nothing.[13] Likewise, Objector Burack also provided his telephone number to Chase and therefore has no claim under the TCPA. (See Konrath Decl., ¶ 7.)[14]

It was this sort of individualized inquiry – a determination whether each Settlement Class Member provided his or her consent – that led to the Settlement. As a result, the Settlement Class is defined to include any person who received a call on his or her cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, without regard to consent. (See Dkt. No. 55-2 ¶ 26.) Several courts, including courts in this District, have agreed with the proposed settlement structure here for precisely these reasons. See, e.g., In re Capital One Tel. Consumer Prot. Act Litig., 80 F. Supp. 3d at 793; Wilkins, No. 1:14-cv-00190, Dkt. No. 117 (N.D. Ill. Feb. 27, 2015). Judge Holderman, for example, recognized that a call-based claims process would in fact be worse for the settlement class —

---

[13]  See In re Rules & Regulations Implementing the TCPA of 1991, 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992) ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."); see also In Re Rules & Regulations Implementing the TCPA of 1991, 23 F.C.C.R. 559 (Jan. 4, 2008) (stating that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party"). This is yet another justification for the claims process, as Settlement Class Members who recognized that they provided consent or otherwise were not bothered to receive auto-dialed calls would not claim because they understood they were not wronged.

[14]  Additionally, both Sberna and Burack, like other Settlement Class Members, have agreed to arbitrate their claims individually with Chase and have agreed not to participate in a class action or collective action. (See Konrath Decl., Exs. A, C.) Accordingly, if this case were litigated, neither would be entitled to recovery from this Court but would have to arbitrate their respective claims individually.

diminishing overall fairness — because increased administration costs would deplete settlement funds.[15]  Id.

       **B.**      **The Release Is Proper And Not Overbroad.**

      The reverse side of the argument that the Settlement gives too little consideration is the argument that the Settlement releases too much, in light of what is given.  The release here is unremarkable and provides no grounds to disapprove the Settlement.[16]  The release is tied closely to the allegations in the pleadings and is consistent with other previously-approved TCPA settlements.  "[A] federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."  Schulte v. Fifth Third Bank, No. 09 C 6655, 2012 WL 2254197, *2 (N.D. Ill. June 15, 2012) (quoting Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d

---

[15]  Before she withdrew her objection, Carlsen argued that the Settlement Class should be redefined to exclude persons who were reassigned a telephone number and who subsequently received exactly one telephone call, on the grounds that under the FCC's Declaratory Ruling these persons have no valid claim.  This objection actually establishes, not undermines, the fairness of the settlement structure here.  If this case were to be litigated, such persons (like those who provided express consent) would need to be excluded, but there is no administratively feasible way to identify them and remove them from a litigated class; accordingly a litigation class would fail the tests of ascertainability, commonality and predominance.  A settlement that covers the entire group of potentially injured persons avoids these significant administrative difficulties and permits relief to reach those persons who might have been injured.  Thus, if this Court were to consider this withdrawn objection, it should be overruled as the Settlement Class definition complies with Rule 23 and is not objectionable.

[16]  Prior to withdrawing her objection, Carlsen argued that the Release improperly released claims other than claims brought pursuant to the TCPA, such as the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").  Putting aside the fact that the FDCPA does not apply to Chase as it is not a "debt collector" as defined by the statute, that the release includes legal theories that might be asserted based on calling activity (such as statutes regulating debt collection activity) does not render the release defective, as Judge Holderman recognized in Wilkins.  See Wilkins, No. 1:14-cv-00190, Dkt. No. 117 (N.D. Ill. Feb. 27, 2015).  Because the only released claims were those based on allegations of use of an automatic telephone dialing system or an artificial or prerecorded voice (as is the case here), the release was not overbroad.  Id.  This Court should reach the same conclusion.

16

266, 273-74 (7th Cir. 1998)).[17] Even so, the release here is appropriately limited to claims based on telephone calling methods challenged in the pleadings.[18]

Further, the Seventh Circuit has recognized that it is "not at all uncommon for settlements to include a global release of all claims, past, present, and future, that the parties might have brought against each other." Williams, 159 F.3d at 274; see also Fair v. Int'l Flavors & Fragrances, Inc., 905 F.2d 1114, 1115-16 (7th Cir. 1990) (holding that the parties' general release was enforceable even though one claim was technically "nonexistent" at the time of settlement). "A settlement offer is a compromise and may include a release of claims not before the court." Oswald v. McGarr, 620 F.2d 1190, 1198 (7th Cir. 1980); see also, In re AT&T Mobility Wireless Data Servs. Sales Tax Litig., 789 F. Supp. 2d 935, 944 (N.D. Ill. 2011) (approving a release that would "forever discharge AT & T Mobility from any and all claims ... causes of action, obligations, ... and costs ... relating in any way or arising out of [AT & T's alleged violation]").

Finally, if any Settlement Class Members did not wish to be bound by the release set forth in the Settlement, they had the choice to exclude themselves from the Settlement. The website notice very clearly informed Settlement Class Members: "Unless you exclude yourself from the settlement, you will be part of the Settlement Class and will be bound by the release of

---

[17] Other circuits also agree that broad releases in class action settlements are appropriate and enforceable. See, e.g., In re Gen. Am. Life Ins. Co. Sales Practices Litig., 357 F.3d 800, 805 (8th Cir. 2004); City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1044 (1st Cir. 1996); In re Corrugated Container Antitrust Litig., 643 F.2d 195, 222 (5th Cir. 1981).

[18] Only claims that "arise out of [. . .] the use [. . .] of an 'automatic telephone dialing system' and/or an 'artificial or prerecorded voice' to make 'calls' to a cellular telephone" are released here. Sberna's contention (Sberrna Objection (Dkt. No. 68), at pp. 9-10) that claims of co-signers are released, even if they were not called, misreads the Settlement Agreement. Only claims related to telephone calls are released, and if a co-signer was never called, there is no claim to release and the (non-existent) claim is not released. Of course, upon approval of the Settlement a co-signer will be barred from asserting derivative standing to sue based on a call made directly to the maker of the obligation (just as claims by the maker's heirs and assigns also will be barred), but that is only because the maker's claims based on actual telephone calls received will be barred by the Settlement.

17

claims in the settlement."  No Objector claims the scope of the release was not clearly communicated.  That the opt-out rate is so low confirms that the release is not overbroad.  See Murray, 434 F.3d at 953.  All Objections to the scope of the release should be overruled.

> **C.**     **The Notice Program Was Excellent And Fully Compliant.**

The Objections to the Notice Program are meritless and also should be overruled.  "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  Manual for Compl. Litig. (2010) at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  Notably, "Class notice is not intended to serve as a complete source of information[.]"  In re Brand Name Prescription Drugs Antitrust Litig., No. 94 C 897, 1996 WL 167347, at *4 (N.D. Ill. April 4, 1996).  Here, Objectors argue that the class notice was deficient because a sixty-day claims period was insufficient (Sberna Objection (Dkt. No. 68), at p. 3).[19] This Objection once again fails to point to any authority mandating a minimum amount of time to submit a claim after being provided notice.  Indeed, no such authority exists.

Objector Sberna argues that sixty days was too short for Settlement Class Members to submit claims.  (Sberna Objection (Dkt. No. 68), at p. 3.)   Notably, he fails to identify any legal authority stating that a sixty-day claim period is insufficient.  (Id.)  He does not because he

---

[19]  Carlsen's Objection that the class notice was deficient because it did not specifically call out the class size should be rejected.  The class size is material only to the degree it may affect the potential amount of the claim payment, and the estimated claim value was clearly and accurately communicated. Indeed, the probable final claim value will exceed the initial estimate.  Moreover, the class size itself was disclosed in the documents posted to the Settlement website, should Carlsen have bothered to review those documents she would have found the information she sought.  Thus, this Objection is meritless.

cannot. Numerous courts have approved claims periods of sixty days or less, and Sberna submits no evidence showing why this particular Settlement Class might require more time than usual to claim. See e.g., Young v. City of Chicago, No. 10 C 989, 2013 WL 9947387, at *4 (N.D. Ill. Dec. 16, 2013) (granting final approval of a settlement with a 45-day claim period); Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc., No. 2:13-CV-00672-KJM-KJN, 2015 WL 3622999, at *15 (E.D. Cal. June 9, 2015) (granting final approval of settlement that with a 48-day claim period); see also Nielson v. The Sports Auth., No. C 11-4724 SBA, 2013 WL 3957764, at *7 (N.D. Cal. July 29, 2013) (granting motion for preliminary approval, noting that "[t]he parties have since revised the settlement agreement to provide for a sixty day claims period. This is sufficient to address the Court's concerns that the notice period is too short"; final approval was subsequently granted on January 23, 2014).[20]

Regardless, even though they are not obligated to do so, the Parties have agreed to honor any claim submitted and received prior to Final Approval, subject to Court approval. Taking this into account, Settlement Class Members were actually afforded over ninety days to submit a claim. The length of the claims period was sufficient and this Objection should be overruled.

**D.    A *Cy Pres* Distribution Will Only Be Made If Two Attempts To Distribute The Money To Settlement Class Members Fails.**

This Court also should reject the Objections made by Carlsen and Sberna on the grounds that the Settlement Agreement addresses the contingency of residual funds by contemplating the

---

[20]   The claim filing rate also exceeds the three percent rate identified by Sberna as typical for class settlements, further establishing that sixty days provided sufficient time for claim filing.

19

later identification of a *cy pres* recipient, if all money cannot be redistributed to Settlement Class Members. (Sberna Objection (Dkt. No. 68), at 5-8; Carlsen Objection (Dkt. No. 66), at p. 3).[21]

Initially, this Court does not even need to address these Objections, because the *cy pres* provision may never be triggered at all. Accordingly, the issue is not ripe and provides no basis to disapprove the Settlement. The Settlement Agreement provides that if claimants do not cash their settlement checks, the administrator will make two attempts to redistribute funds to Settlement Class Members, in hopes of fully exhausting the Fund. If these efforts are successful, there will be no need for any *cy pres* distribution at all. There is no point to spend time now to identify a future *cy pres* recipient who may never be needed at all and who, even if needed, would receive only a minimal distribution of funds left over from uncashed settlement checks. In re Am. Int'l Grp., Inc. Sec. Litig., 293 F.R.D. 459, 463 (S.D.N.Y. 2013).

Moreover, it is perfectly appropriate for a class settlement to provide for *cy pres* if reasonable attempts to deliver funds to settlement class members are unfeasible.[22] See Glen Ellyn Pharmacy, Inc. v. La Roche–Posay, LLC, No. 11 C 968, 2012 WL 619595, at *1 (N.D. Ill. Feb. 23, 2012) (holding that "[t]he authority to make *cy pres* grants to dispose of the remainder of a class action settlement fund is well established"); see also McKinnie v. JP Morgan Chase

---

[21] Sberna's statements that the *cy pres* is somehow impacted by the number of claims submitted and that there is more than one potential *cy pres* recipient are factually false, and once again reflect his careless reading of the Settlement Agreement. (See Sberna Objection (Dkt. No. 68), at p. 7 ("Anticipating that class members will not file enough claims to exhaust the meager fund established by the parties, they have agreed that any 'residual' funds remaining that are unclaimed by class members-regardless of the reason-will be funneled into yet another *cy pres* recipient[.]") (emphasis added).)

[22] The Agreement also calls for *cy pres* distribution where the remaining funds will be insufficient to pay each Settlement Class Member who cashed the initial check $10. Objector Rhoades argues that such an amount is "arbitrary." But this threshold is intended to protect the remaining funds as administration costs, including with respect to any second distribution, are to be paid from the Fund. Thus, if no threshold is set, the costs associated with sending and administering the second distribution might exceed the value of the check itself. Because the second distribution applies only to checks that are not cashed by Settlement Class Members who filed valid Claims, it is highly unlikely that any significant amount of money remains and Objector Rhoades' estimate of $1,000,000 is baseless.

20

Bank, N.A., 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009) (noting that *cy pres* distributions in class actions are routine, "particularly when locating and ascertaining the status of all individual class members is prohibitively difficult or expensive"); In re Mex. Transfer Litig., 164 F. Supp. 2d at 1031 ("The Seventh Circuit and other courts have recognized that *cy pres* contributions are proper and often are part of class action settlements."). Nor is there any argument that Settlement Class Members were not adequately informed of what will trigger the need for *cy pres*. Objections to the *cy pres* contingency should be overruled.

**E.** **Final Approval Need Not Be Delayed Pending The Supreme Court's Decision In <u>Spokeo</u>.**

Although since withdrawn, objector Carlsen argued that this Court should delay approval pending a decision in <u>Spokeo</u>. To the extent this Court considers this withdrawn objection, it is unsupported by the law and should be overruled. If anything, the pendency of <u>Spokeo</u> would favor <u>accelerated</u> action on the motion for final approval of the Settlement, as a decision by the Supreme Court that statutory damages may not be pursued in the absence of injury in fact risks leaving the Settlement Class with no recovery whatsoever.

1. <u>Each Of The "Stay Factors" Favors Denial Of A Request To Stay.</u>

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 255 (1936). The proponent of a stay must "make out a clear case of hardship or inequity" in being required to go forward with litigation. <u>Id</u>. Further, the proponent of a stay bears the burden of establishing its need. <u>Clinton v. Jones</u>, 520 U.S. 681, 708 (1997) (stay should not have been granted).

In deciding whether to grant a stay, courts will "balance the competing interests of the parties and the interest of the judicial system."  Markel Am. Ins. Co. v. Dolan, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (citing Landis, 299 U.S. at 254–55, 57 S.Ct. 163 (The court "must weigh competing interests and maintain an even balance.")).  Courts generally consider three factors when determining whether to grant a stay: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-objecting party.  In re Groupon Derivative Litig., 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012).  The court has discretion in exercising its authority to stay.  Trippe Mfg. Co. v. Am. Power Conversion Corp., 46 F.3d 624, 629 (7th Cir. 1995).  Each of these factors weighs in favor of denying a stay here.

### 2.        Chase Would Be Prejudiced By A Stay.

First, and most importantly, entering a stay at this stage would prejudice Chase in light of the significant expense already undertaken in connection with the Settlement notice and administration.  This Court granted preliminary approval of the Settlement after the Supreme Court had already granted certiorari in Spokeo and Plaintiff had advised this Court of the pendency of Spokeo in her Motion for Preliminary Approval, filed on May 12, 2015.  Plaintiff disclosed to the Court that "[t]here is also a risk that the Supreme Court will hold that statutory damage class actions lack Article III standing.  This issue is before the Court in Spokeo v. Thomas Robbins, 11-56843 (9th Cir. 2014) (cert. granted April 27, 2015).  Because there are concrete damages to calling a persons' cellular telephone, Plaintiff does not believe that an adverse ruling in Spokeo would impact TCPA cases, but it is possible."  (Dkt. 55 at p. 18.)  This Court proceeded to enter an Order preliminarily approving the Settlement, conditionally

certifying the Settlement Class, and directing notice to the Settlement Class to advise them that a final fairness hearing would be scheduled.

To date, the parties have expended over $800,000 in settlement administration costs, including class notice expenses. (See Dkt. No. 81.) Entering a stay at this late stage would greatly prejudice Chase — a stay, if appropriate at all, should have been entered prior to preliminary approval of the settlement and before class notice had been disseminated. The Parties as well as Settlement Class Members who have made arrangements to attend the final approval hearing and who may already have made travel arrangements also would potentially be prejudiced by a stay of the final fairness hearing.

3.    A Stay Will Prejudice The Settlement Class By Exposing It To The Risk Of No Recovery Whatsoever.

As articulated by the Supreme Court, the question to be decided in Spokeo is: "Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Spokeo, No. 13-1339 (Cert. granted April 27, 2015). Thus, the decision in Spokeo may clarify the injury in fact requirement in all actions in which plaintiffs seek statutory damages awards in the absence of concrete harm, including TCPA actions. In the TCPA context, even where a plaintiff does not and cannot allege any economic harm as a result of defendant's call or text (i.e., that the plaintiff did not incur any charges), courts routinely hold that the alleged violation of plaintiff's statutory rights satisfies Article III standing because the TCPA protects against invasion of privacy and nuisance. A broad holding by the Supreme Court that concrete injury is required to satisfy Article III would require a plaintiff asserting a TCPA cause of action to establish concrete injury – something that

23

would preclude many Settlement Class Members from any recovery depending on how they are billed per call.

> 4.   A Stay Will Neither Simplify The Issues In Question Or Streamline The
>      Trial, Nor Reduce The Burden On The Parties Or The Court.

First, this case has already settled — there are no additional issues or trial on the horizon. The Parties have negotiated an arm's-length settlement of this case and no outstanding issues exist. Therefore, a stay would not benefit the proceedings at hand. In fact, it will increase the burden on the Parties, the Court and the Settlement Class, as all efforts will need to be placed on hold until the Supreme Court's ruling in Spokeo. That is why a settlement should be evauated at the time it was entered into and approved. See In re Sw. Airlines Voucher Litig., No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013), appeal dismissed (Jan. 3, 2014), aff'd as modified, No. 13-3264, 2015 WL 4939676 (7th Cir. Aug. 20, 2015) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

## IV.   CONCLUSION

For the foregoing reasons, Chase respectfully requests that the Objections be overruled and the Settlement Agreement be finally approved.

24

Dated:  October 7, 2015                    Respectfully Submitted,

                                           For JPMorgan Chase Bank, N.A.


                                           By:


                                                   */s/ Julia B. Strickland*
                                           Julia B. Strickland
                                           Stephen J. Newman
                                           Arjun P. Rao
                                           Julieta Stepanyan
                                           2029 Century Park East
                                           Los Angeles, CA 90067-3086
                                           Telephone:  (310) 556-5800
                                           Facsimile:  (310) 556-5959
                                           Email:  lacalendar@stroock.com

                                           Gloria R. Mitka
                                           Associate General Counsel
                                           JPMorgan Chase Legal Department
                                           10 S. Dearborn, Floor 20 (IL-0287)
                                           Chicago, IL 60603
                                           Telephone: 312-732-3245
                                           Fax: 312-732-8040
                                           Email: Gloria.mitka@jpmchase.com

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2015, I electronically filed the foregoing **RESPONSE OF DEFENDANT JPMORGAN CHASE BANK, N.A. TO OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT AGREEMENT** with the Clerk of the U.S. District Court, using the CM/ECF system reflecting service to be served upon all parties of record.


*/s/ Julia B. Strickland*
_____
Julia B. Strickland


26

LA 51907936