## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SHEILA ALLEN, individually and on behalf
of all others similarly situated,

      Plaintiffs,

v.

JP MORGAN CHASE BANK, N.A.,

      Defendant.

Case No. 13-cv-08285

Judge Rebecca R. Pallmeyer

## CLASS PLAINTIFFS' MOTION FOR APPEAL BOND

On October 21, 2015, this Court entered a Final Approval Order in the above-captioned matter, authorizing the release of funds to 84,000-plus people who filed claims in anticipation of receiving their fair share of the settlement. The Final Approval Memorandum Order was entered on October 27, 2015. Objector Robert Burack immediately filed a notice of appeal on October 29, 2105. (D.E. 94) Although Jeffrey Thut appeared on behalf of Mr. Burack before this Court, on appeal he is represented by notorious serial objector counsel, Christopher Bandas. As detailed below, Mr. Bandas has a reputation for hijacking class action settlements across the country for his personal gain, has repeatedly been ordered by U.S. District Courts to post appeal bonds of up to $500,000, and has been sanctioned for failing to post the required bonds. Based upon the overwhelming evidence that Mr. Burack's appeal was not filed in good faith, Plaintiffs ask that this court impose an appeal bond pursuant to Fed. R. App. P. 7 in the amount of $121,886. As detailed below, the requested bond is less than 1% of the settlement and includes the expenses and other costs that will necessarily be incurred on appeal. This bond will ensure the payment of those costs to defend against a vexatious and meritless appeal.

Federal Rule of Appellate Procedure 7 states that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The Advisory Committee Notes to the Rule indicate that it leaves "the question of the need for a bond for costs and its amount in the discretion of the [district] court." Fed. R. App. P. 7, Adv. Comm. Notes. The Seventh Circuit has not articulated a specific test, but courts in other jurisdictions generally consider four factors: (1) the merits of the appeal; (2) whether the appellant has shown any bad faith or vexatious conduct; (3) the appellant's financial ability to post a bond; and (4) the risk that the appellant will not pay the appellee's costs of an unsuccessful appeal. See, e.g., Berry v. Deutsche Bank Trust Co. Americas, 632 F.Supp.2d 300, 307 (S.D.N.Y.2009). Each of the four factors weighs heavily in favor of requiring Objector Burack and his attorneys to post a bond.

### A. The appeal is meritless.

First, it should be noted that Robert Burack's individual TCPA claim is worth very little to nothing, and but for this action he would have no basis whatsoever to recover damages. According to the Chase, Mr. Burack entered into a Retail Installment Contract in 2005 containing an arbitration agreement and class waiver. (D.E. 88) In addition, Mr. Burack admitted that not only did he voluntarily provide his cellular phone number, but also indicated that it was a good number by which to reach him. (D.E. 88-1) Robert Burack's objections to the settlement included claims that (1) the settlement is inadequate because it provides relief "per person" and not "per violation"; (2) texts were not included in the class definition; (3) attorneys' fees are excessive; and (4) the service award is excessive. (D.E. 63) On appeal, Burack will be limited to the issues that he raised in his objection, e.g., Singleton v. Wulff, 428 U.S. 106, 121 (1976) and he will be required to show that this Court abused its discretion when it granted final

approval of the Settlement. "[The Seventh Circuit will] review such an approval for an abuse of discretion." Wong v. Accretive Health, Inc., 773 F.3d 859, 862 (7th Cir. 2014) citing Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir.1996).

Burack has no reasonable expectation of prevailing under this deferential standard, as this Court's approval of the settlement was amply supported by the record. As this Court observed, the reasonableness and adequacy of the Settlement is demonstrated by the fact that out of over 2 million putative members and over 84,000 claims filed, only four people objected. As detailed in both Plaintiffs' and Defendant's responses to the objections (D.E. 82, 88) the parties have already detailed the insurmountable deficiencies in Objector Burack's objections. Briefly, per-violation relief would be overwhelmingly unmanageable and expensive to administer, requiring individualized inquiry into each class member's account, depleting the settlement fund, delaying payment of claims, and altogether threatening the viability of class settlement. (D.E. 88) Moreover, this Court found that the fee and incentive awards are reasonable, justified, and fully consistent with Seventh Circuit precedent. (D.E. 98) In short, this Court has considered Mr. Burack's objections and within its sound discretion rejected them all. (D.E. 98)

B.      The appeal is vexatious.

Mr. Bandas is well known in courts across the United States as a "professional" or "serial" objector. See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig., No. 07-5944, 2012 WL 1319881, at *2 (N.D. Cal. April 16, 2012) (Mr. Bandas is a "'professional' or 'serial' objector" who "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain . . . ."). In a 2013 study by the Federal Judicial Center, Mr. Bandas was identified as one of the country's most prolific objectors' counsel. (Ex. A.) Mr. Bandas and Mr. Thut were

3

also profiled in a recent article about serial objectors in Reuters, which described Mr. Bandas' attempt to obtain $400,000 from one law firm in order to withdraw his objections (Ex. B.), as well as U.S. District Court Judge James Robart's order barring Bandas from practicing in the Western District of Washington for bad faith conduct. Dennings v. Clearwire Corp., No. 2:10-CV-01859-JLR, Dkt. No. 166 (W.D. of Wash., Aug. 20, 2013); attached as Exhibit C.

Mr. Bandas's usual practice is to file frivolous, boilerplate objections without appearing at the Final Approval Hearing. While an objector need not appear at the final approval hearing, the reason Mr. Bandas and his clients do not appear is because his underlying motivation is to leverage a settlement at the appellate stage under threat of holding the settlement funds hostage. In fact, Mr. Bandas filed a notice of appeal barely two days after this Court entered an order approving the settlement and without the benefit of the transcript of the final approval hearing to evaluate the merits on appeal. In short, it really did not matter what this Court held, as Mr. Bandas's strategy is always to appeal. This has been a successful strategy for Mr. Bandas. Id.; In re Wal-Mart Wage & Hour Employment Practices Litig., MDL No. 1735, No. 06-00225, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (noting that Bandas has a "documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when [he] and [his] client[] were compensated by the settling class or counsel for the settling class"). The objective of this procedure is simply to hold the settlement hostage so that Mr. Bandas can extract his own personal gain. Id.

Mr. Bandas has been censured by courts nationwide for these tactics. See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig., 2012 WL 1319881 at *2-*3; In re Wal-Mart Wage & Hour Employment Practices Litig., 2010 WL 786513 at *1-*2. Attached as Exhibit D is a chart that was filed in In re Cathode Ray Tube (CRT) Antitrust Litig., No. 07-5944 (N.D. Cal. Mar.

15, 2012) to illustrate the numerous objections and appeals that Mr. Bandas has filed to class

action settlements, and the corresponding reprimands that he has received. Mr. Bandas has been

excoriated by courts for "hijacking" settlements from deserving class members and hard-working

class counsel, failing to adhere to his Rule 11 obligations, filing patently frivolous and cookie-

cutter objections, and engaging in "extortion." Id.

Federal courts have grown "increasingly weary of professional objectors" such as Mr.

Bandas, O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D 266, 295 n.26 (E.D. Pa. 2003),

because they are "a pariah to the functionality of class action lawsuits, as they maraud proposed

settlements—not to assess the merits on some principled basis—but in order to extort the parties,

and particularly the settling defendants, into ransoming a settlement that could otherwise be

undermined by a time-consuming appeals process." Snell v. Allianz Life Ins. Co. of N. Am., No.

97-2784, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000).  Professional objectors cause real

harm to the Class, because payments from the settlement fund are delayed until the appeals are

resolved.  As an Ohio federal district court judge noted:

> [C]lass actions . . . attract those in the legal profession who subsist
> primarily off of the skill and labor of, to say nothing of the risk
> borne by, more capable attorneys. These are the opportunistic
> objectors. Although they contribute nothing to the class, they
> object to the settlement, thereby obstructing payment to the class in
> the hope that lead plaintiff will pay them to go away.
> Unfortunately, the class-action kingdom has seen a Malthusian
> explosion of these opportunistic objectors . . . .

In re Cardinal Health, Inc. Sec. Litig., 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008).  As a result of

the above, to prevent abuse of appellate and class action procedure, Class Counsel requests that

this Court order Mr. Burack and his attorneys to post an appeals bond in accordance with Federal

Rule of Appellate Procedure 7.  See, e.g., In re Initial Pub. Offering Sec. Litig., 728 F. Supp. 2d

289, 294-95 (S.D.N.Y. 2010) (professional objectors' status taken into account in determining

that appeal was vexatious, and thus appeals bond was warranted).  See also Sckolnick v. Harlow, 820 F.2d 13, 15 (1st Cir. 1987) (upholding imposition of appeal bond under Rule 7 based on possibility that appeal was frivolous).

      **C.**    **Objector Burack and his counsel have the financial ability to post bond.**

Unless an appellant demonstrates otherwise, she or he is presumed to be financially able to post an appeals bond.  See In re Initial Pub. Offering Sec. Litig., 728 F. Supp. 2d at 293; In re MagSafe Apple Power Adapter Litig., 2012 U.S. Dist. LEXIS 88549 (N.D. Cal. May 29, 2012) (requiring objectors to make themselves available for a deposition on ability to pay, if contested). Accordingly, Objector Burack and his attorneys are presumed to be able to post an appeal bond in this matter.  More fundamentally, since Mr. Burack is represented by an attorney on a contingent-fee basis who frequently files and objects in class actions across the United States, the appeal bond requirement should be an expected and reasonable expense.   In addition, attached as Exhibit E is the affidavit of Theodore Frank, who attested that Mr. Bandas paid Mr. Frank hundreds of thousands of dollars for Mr. Frank's work on various objections.  Clearly, if Mr. Bandas could offer to pay Mr. Frank, he should have sufficient funds to pay a bond.  Finally, Mr. Burack is a successful businessman that resides in Highland Park and manages a home healthcare company that employs over 150 employees across the Chicago area.[1]  Deposition of Burack at 7, attached as Exhibit F.  He also has a commercial real estate development business on the side, and pays his attorney cash retainers and advances with business funds from the healthcare company, without questioning them.  Deposition of Burack at 41, 42, attached as Exhibit F.  There is no reason to believe that a bond should be a hardship to either.

---

[1] Mr. Burack claims that the business is owned by his wife, but the Better Business Bureau lists him as the owner: http://www.bbb.org/chicago/business-reviews/home-health-services/freedom-home-care-in-highland-park-il-88014892.  The business website is at www.freedomhomecare.net

**D.      There is a Significant risk Burack and his counsel will not pay costs.**

Requiring Objector Burack and his counsel to post an appeal bond is necessary, primarily

because Mr. Bandas has previously flouted court orders regarding appeals bonds but also

because Mr. Burack has previously filed for bankruptcy (Illinois Northern Bankruptcy Court,

Case No. 92-17082) and has had many judgments entered against him[2], including a mortgage

forclosure action brought by Chase, attached as Exhibit G.  He has refused to pay those

judgments, leading to citations to discover assets.  See Bank Financial FSB v. Burack, 2008-L-

010665 (Circuit Court of Cook County, Law Division)[3].  With respect to Mr. Bandas, in In re

Wal-Mart Wage and Hour Employment Practices Litig., MDL No. 1735, No. 06-00225, 2010

WL 2132094, *1-*2 (D. Nev. May 25, 2010), Judge Pro in the District of Nevada sanctioned Mr.

Bandas and his objector-client for failing to comply with the court's order to post an appeals

bond of $500,000.  Id.  The court had ordered the appeal bond due to the "frivolous" nature of

the appeal, which was "tantamount to a stay of the Judgment entered by [the] Court on

November 2, 2009 approving the comprehensive class settlement in this case which provides fair

compensation to millions of class members, as well as injunctive relief ensuring against further

loss to persons similarly situated."  In re Wal-Mart Wage & Hour Employment Practices Litig.,

2010 WL 786513, at *2.  According to the order imposing sanctions, Mr. Bandas and his client

were jointly and severally required to "pay to the Plaintiffs' Settlement Fund the sum of $200 per

day for each of the intervening days between March 30, 2010 and May 18, 2010, or a total of

---

[2]

https://w3.courtlink.lexisnexis.com/cookcounty/FindDock.asp?NCase=&SearchType=2&Database=2&case_no=&Year=&div=&caseno=&PLtype=2&sname=robert+burack&CDate=
https://w3.courtlink.lexisnexis.com/cookcounty/FindDock.asp?NCase=&SearchType=2&Database=1&case_no=&Year=&div=&caseno=&PLtype=2&sname=robert+burack&CDate=

[3] https://w3.courtlink.lexisnexis.com/cookcounty/Finddock.asp?DocketKey=CAAI0L0ABAGGF0LD

$10,000" as a sanction "for their failure to comply with this Court's Order of March 8, 2010 requiring them to post an appeal bond." In re Wal-Mart Wage & Hour Employment Practices Litig., 2010 WL 2132094, at *1.  In addition to the above, Mr. Burack and his counsel should be required to post a bond in this case because there is a likelihood that Mr. Burack will treat this as just another judgment to be ignored and Mr. Bandas will repeat history by flouting court rules and failing to pay appellate costs when Objector Burack's appeal fails.

###        E.        The amount of the requested bond is reasonable.

The bond amount requested by the Parties in the instant case is wholly reasonable and will further the goal of preventing a frivolous and time-consuming appeal in this case.  As noted by a U.S. District Court Judge Ann Montgomery, "[a]ppeal bonds are often required on appeals of class action settlements or attorneys' fee awards because the appeal effectively stays the entry of final judgment, the claims, process, and payment to all class members." In re Uponor, Inc., No. 11-MD-2247ADM/JJK, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012).  When determining the appropriate amount of an appeal bond, most federal courts routinely consider a range of potential costs, and include an estimate of class members' lost interest that results from delayed distribution of settlement relief.  "The costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal." In re Checking Account Overdraft Litig., 2012 U.S. Dist. LEXIS 18384, *41 (S.D. Fla. Feb. 14, 2012).

Many federal courts have imposed included the excess costs of the class administrators due to the delay occasioned by the appeal.  Miletak, 2012 U.S. Dist. LEXIS 125426 at *6-*7 (including $50,000 in "administrative costs," incurred in order "to continue to service and respond to class members' needs pending the appeal"); Uponor, Inc., No. 11-MD-2247 (Dkt. No. 132 at 9) (including $20,000 in additional claims administrator costs as part of appeal bond,

because such costs are "reasonable and necessary" and "should be shouldered by the objectors, particularly given the tenuous nature of their arguments"); In re Pharm. Indus. Average Wholesale Price Litig., 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (including in Rule 7 bond $61,000 in "administrative costs attributable to delay in [settlement] distribution"); Allapattah Servs., Inc. v. Exxon Corp., No. 91-0986, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006). Consistent with the reasoning in the decisions cited above, the instant Class should not bear the costs associated with this frivolous appeal. Here, the class administrators have estimated the additional administration costs to be up to $49,500. (Gyomber Dec. at 1, attached as Exhibit H.)

Consistent with this approach, courts also regularly consider post-judgment interest in bond calculations. See also, e.g., Conroy v. 3M Corp., 2006 U.S. Dist. LEXIS 96169, *6 (N.D. Cal. 2006) (including in bond amount "$239,667 in anticipated post-judgment interest to compensate for the delayed distribution of the $4.1 million cash portion of the settlement"); In re Wal-Mart, 2010 WL 786513 at *2, (requiring appeal bond of $500,000, including consideration of "administrative costs and interest costs to the potentially more than 3 million class members, [and] other costs reasonably incurred under Rule 39 of the Federal Rules of Appellate Procedure"); FleetBoston Fin. Corp., 2006 U.S. Dist. LEXIS 71072 at *8 (including estimated interest on settlement amount as part of bond amount). Here, projected post-judgment interest amounts to an additional $47,386.[4]

In addition to the above, Rule 39(e) costs alone have amounted to the $10,000-$50,000 range. See In re Initial Pub. Offering Sec. Litig., 728 F. Supp. 2d at 295 (concluding $25,000 to be appropriate amount to cover Rule 39(e) costs); In re Wells Fargo Loan Processor Overtime

---

[4] 28 U.S.C. § 1961(a). The Class projects a delay of up to 18 months, which is consistent with Mr. Caffarelli's personal experience on appeal. Applying the FRS' October 30 interest rate of 0.31% for 18 months to the $10,200,000 in the fund results in $47,386 in interest.

Pay Litig., 2011 U.S. Dist. LEXIS 84541, *29 (N.D. Cal. Aug. 2, 2011) (imposing $20,000 appeal bond on class action objector); In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig., 2011 U.S. Dist. LEXIS 92293, *5-*6 (N.D. Cal. Aug. 18, 2011) (imposing $15,000 appeal bond on objector, a fixed-income retiree who had sought to appear in forma pauperis); In re Currency Conversion Fee Antitrust Litig., 2010 U.S. Dist. LEXIS 50436, *5 (S.D.N.Y. May 21, 2010) (noting $50,000 appeal bond was warranted for Rule 39(e) costs). Here, the Class believes that Rule 39(e) costs could add up to $25,000.

Therefore, Burack should be required to post a bond in the amount of $121,886, which consists of $47,386 in interest, $49,500 in additional costs of administration, and $25,000 in potential costs pursuant to Rule 39(e). Consistent with this, Judge Cote of the U.S. District Court for the Southern District of New York concluded that Christopher Bandas 'has a history of vexatious conduct through settlement objections' and ordered the objector he represents to post a bond in the amount of $54,700. In re General Electric Company Securities Litigation, No. 09-cv-1951 (S.D.N.Y. Feb. 11, 2014). Ultimately, the amount requested here is well within the range of bonds that have been ordered in other appellate cases, and significantly below the amount that Mr. Bandas has regularly been ordered to pay for similar appeals. See, e.g., In re Wal-Mart Wage & Hour Employment Practices Litig., 2010 WL 786513, at *2 (requiring Mr. Bandas and his objector-client to post a $500,000 appeal bond under Fed. R. App. 7); Conroy v. 3M Corp., No. 00-02810 (N.D. Cal. August 10, 2006), Dkt. No. 265 (Order granting motion to require objectors and the Bandas Law Firm jointly and severally to post an appeal bond of $431,167.00)); see also In re Currency Conversion Fee Antitrust Litig., 2010 U.S. Dist. LEXIS 50436, *5, (finding $16,000 too low and ordering the posting of a $50,000 bond).

**CONCLUSION**

As a fiduciary for the Class, this Court has an obligation to ensure that the fund, which exists for the benefit of the Class, is not depleted as a result of these frivolous objections and appeal. For the reasons set forth herein, Class Plaintiff respectfully requests that this Court require Objector Robert Burack and Christopher Bandas to jointly and severally post an appeal bond of $121,886 no later than Monday, December 7, 2015.


Dated: November 9, 2015

Respectfully Submitted,

By: */s/ Alejandro Caffarelli*

Keith J. Keogh
Timothy Sostrin
Michael Hilicki
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
Telephone: 312-726-1092

Alejandro Caffarelli, #06239078
Lorraine T. Peeters, #06290434
Caffarelli & Associates Ltd.
214 South Michigan Ave., Ste. 300
Chicago, IL 60604
Telephone: 312-763-6880
Email: acaffarelli@caffarelli.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the attached, **Plaintiffs' Motion for Appeal Bond**, to be served upon the party below by electronically filing with the Clerk of the U.S. District Court of the Northern District of Illinois on November 9, 2015.

Julia B. Strickland
Arjun P. Rao
Strook & Strook & Lavan LLP
2029 Century Park East, 16th Floor
Los Angeles, CA 90067
T (310) 556-5800
E-mail: jstrickland@stroock.com; arao@stroock.com

Gloria B. Mitka
Associate General Counsel
JPMorgan Chase Legal Department
10 S. Dearborn, Floor 20 (IL-0287)
Chicago, IL 60603
E-mail: gloria.mitka@jpmchase.com

Brent F. Vullings
Vullings Law Group
3953 Ridge Pike, Suite 102
Collegeville, PA 19426
E-mail: bvullings@vullingslaw.com

C. Jeffrey Thut (also via electronic mail and U.S. Mail)
516 N. Milwaukee Avenue
Libertyville, IL 600048
Email: jeff@roachjohnstonthut.com

Jonathan E. Fortman
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florrissant, Missouri 63031
E-mail: jef@fortmanlaw.com

Christopher A. Bandas (only via electronic mail and U.S. Mail)
The Bandas Law Firm, P.C.
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, TX 78401
E-mail: cbandas@bandaslawfirm.com

/s/ Alejandro Caffarelli
Attorney for the Plaintiff